# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

HUGO ARELLANO-AYLLON,            :
                                                             CIVIL ACTION NO. 3:19-1999
                        Petitioner       :
                                                                (JUDGE MANNION)
             v.                                :

WARDEN CRAIG A. LOWE,            :

                   Respondent       :

## MEMORANDUM[1]

Petitioner Arellano-Ayllon ("Petitioner"), a detainee of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), presently confined at the Pike County Correctional Facility, Lords Valley, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 (Doc. 1), challenging the constitutionality of his continued detention pending removal from the United States and seeking an individualized bond hearing.

For the reasons set forth below, the Court will deny the petition for writ of habeas corpus without prejudice.

---

[1] This matter has been reassigned due to the death of the Honorable James M. Munley.

I.    **Background**

Petitioner is a citizen and native of Mexico. (Doc. 8-1, p. 8). On September 3, 2014, he applied for Deferred Action for Childhood Arrivals (DACA)[2] and on November 14, 2014, DHS approved his status for two years. (Id. at 5). He was paroled into the United States on September 21, 2016, in Houston, Texas after arriving at the Houston George Bush Intercontinental Airport from Juarez, Mexico. (Id. at 7).

Following a June 5, 2016 arrest for Driving Under the Influence, Petitioner was convicted of Disorderly Conduct/Hazardous/Physical Offense and sentenced to three-month probation. (Id. at 5, 6).

His DACA status expired on May 22, 2018. (Id. at 3).

A May 16, 2019 targeted operation by ICE's Enforcement and Removal Operations division resulted in Petitioner's arrest. (Id. at 2). At the time of arrest, he claimed a fear of return to Mexico. (Id. at 3.) ICE placed him in removal proceedings with the issuance of a Notice to Appear charging him as an inadmissible immigrant without proper entry documentation under

_____

[2] DACA provided protections for certain individuals without lawful immigration status who had entered the United States as children. In re United States, — U.S. —, 138 S. Ct. 443, 199 L. Ed. 2d 351 (2017).

Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA), 8 U.S.C. §1182(a)(7)(A)(i)(I), as amended. (Id. at 3, 8-10).

On June 10, 2019, Petitioner appeared for his first master calendar hearing at which time the immigration judge ("IJ") continued his case until July 1, 2019, to afford his attorney time to prepare. (Id. at 12-17). The next week, the IJ granted the attorney's motion to withdraw. (Id. at 19). Petitioner appeared on July 1, 2019, and requested more time to obtain different counsel. (Id. at 21-26). The IJ afforded him three additional weeks; his next hearing was set for July 22, 2019. (Id. at 24).

On July 22, 2019, counsel insisted that ICE had incorrectly charged Petitioner and requested that the proceedings be terminated. (Id. at 27-34). The IJ set an August 1, 2019 deadline for the filing of a motion to terminate and set a new hearing date of August 19, 2019, to address the contested removal and obtain an update on Petitioner's adjustment of status, DACA renewal application, application for asylum, and any other applications for relief from removal he intended to file. (Id.)

On August 1, 2019, Petitioner moved to terminate the proceedings. (Id. at 41-53). At his August 19, 2019 hearing, the IJ judge denied the motion and designated Mexico as his country of removal. (Id. at 54-63). Petitioner's attorney advised the court that Petitioner was pursuing marriage to a United

- 3 -

States Citizen to adjust status and a renewal of his DACA status with United States Citizen to adjust status and a renewal of his DACA status with United States Citizenship and Immigration Services ("USCIS"), as well as CAT, and asylum through the immigration court. (Id.) Petitioner was afforded until September 20, 2019, to submit a brief regarding which "particular social group" he identified with on his applications for relief from removal and the IJ set a merits hearing on his applications for November 20, 2019. (Id.). On November 7, 2019, the IJ denied a request to continue the November 20, 2019 merits hearing on the basis that the hearing had been scheduled in August and the motion seeking a continuance had not been filed until two weeks prior to the hearing. (Id. at 65).

On November 20, 2019, the IJ ordered Petitioner removed. (Id. at 101). The IJ noted that no applications for relief from removal had been filed, and while he had one application pending with USCIS, he waited until the last minute to file it and had yet to file the second application he had expressed an interest in filing six months prior. (Id.) Further, the IJ advised him that "every second counts" when in removal proceedings and that despite the passage of time and his inaction to date, he could still apply to terminate the proceedings before the Board of Immigration Appeals ("BIA") if he obtained status at any time prior to removal. (Id. at 104-07).

- 4 -

Petitioner appealed the IJ's decision to the BIA. According to the Executive Office for Immigration Review's Automated Case Information portal, the appeal is currently pending.

On December 23, 2019, the IJ denied Petitioner's request for a custody redetermination based on the following: "Arriving Alien – No Jurisdiction; [Petitioner] is in removal proceedings and case is on appeal at the BIA." (Doc. 8-1, p. 110).

## II.   <u>Discussion</u>

Under 8 U.S.C. §2241(c), a prisoner or detainee may receive habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States." <u>See</u> 28 U.S.C. §2241(c)(3); <u>see</u> <u>also</u> Maleng v. Cook, 490 U.S. 488, 490 (1989). Because Petitioner is currently detained within the jurisdiction of this Court and asserts that his continued detention violates due process, this Court has jurisdiction over his §2241 petition. <u>See</u> Zadvydas v. Davis, 533 U.S. 678, 699 (2001).

Immigration officials are required to inspect arriving aliens before granting admission to the United States. <u>See</u> 8 U.S.C. §§1101(a)(13)(A), 1225(a)(3). If the alien lacks valid entry documentation, he or she is deemed inadmissible. <u>Id.</u> at §1182(a)(7)(A)(i)(I). If at the time of arrival, the alien

expresses an intent to apply for asylum, he or she receives an interview with an asylum officer to assess whether there exists a credible fear of persecution if he or she returns to their home country. Id. at §1225(b)(1)(A)(i); cf. id. at §1225(c)(1); id. §1225(b)(1)(A)(ii), (B)(i). If the asylum officer concludes that the alien has a credible fear of persecution, the alien is referred to removal proceedings under 8 U.S.C. §1229(a), to allow an IJ to consider the asylum application. 8 C.F.R. §208.30(f); see 8 U.S.C. §§1229a; 1225(b)(1)(B)(ii). The alien remains detained under §1225(b) during the pendency of those proceedings. See Rades-Suarez v. Doll, No. 1:19-CV-1946, 2020 WL 362696, at *1 (M.D. Pa. Jan. 22, 2020); Pulatov v. Lowe, No. 1:18-cv-934, 2019 WL 2643076, at *2 (M.D. Pa. June 27, 2019); Ahmed v. Lowe, No. 3:16-cv-2082, 2017 WL 2374078, at *2-3 (M.D. Pa. May 31, 2017).

8 U.S.C. §1182(d)(5)(A) is the only statute that permits an alien's release from §1225(b) custody. The statute provides that an alien may be paroled into the United States if the Attorney General determines "on a case-by-case basis" that "urgent humanitarian reasons or significant public benefit" warrant the release. Id. Decisions under §1182 are purely discretionary and the regulations prevent an IJ from "redetermin[ing] conditions of custody" with respect to certain classes of aliens, including

"[a]rriving aliens in removal proceedings, including aliens paroled after arrival

pursuant to section 212(d)(5) of the Act." 8 C.F.R. §1003.19(h)(2)(i)(B).

Upon presentation for admission to the United States, Petitioner was

immediately detained and classified as an "arriving alien." See 8 C.F.R.

§1001.1(q) ("The term arriving alien means an applicant for admission

coming or attempting to come into the United States at a port-of-entry.").

Because he was never admitted into the United States, he is an inadmissible

arriving alien and his detention is controlled by §1225(b). There is no

statutory entitlement to bond hearings under §1225(b). In Jennings v.

Rodriguez, — U.S. —, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018), the Supreme

Court reversed the Ninth Circuit's holding that non-citizens detained under

§§1225(b)(1), (b)(2), and 1226(c) are entitled to bond hearings every six

months. Id. at 842. The Jennings Court reasoned:

> §1225(b) applies primarily to aliens seeking entry into the United
> States ("applicants for admission" in the language of the statute).
> Section 1225(b) divides these applicants into two categories.
> First, certain aliens claiming a credible fear of persecution under
> §1225(b)(1) "shall be detained for further consideration of the
> application for asylum." §1225(b)(1)(B)(ii). Second, aliens falling
> within the scope of §1225(b)(2) "shall be detained for a [removal]
> proceeding." §1225(b)(2)(A).
>
> Read most naturally, §§1225(b)(1) and (b)(2) thus mandate
> detention of applicants for admission until certain proceedings
> have concluded. Section 1225(b)(1) aliens are detained for
> "further consideration of the application for asylum," and

§1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under §1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither §1225(b)(1) nor §1225(b)(2) says anything whatsoever about bond hearings.

Id. at 842. The court concluded that both §§1225(b)(1) and (b)(2) "mandate detention until a certain point and authorize release prior to that point only under limited circumstances. As a result, neither provision can reasonably be read to limit detention to six months." Id. at 844.

Petitioner's appeal of the IJ's ruling is presently pending before the BIA. He is therefore subject to mandatory detention. Id. at 844 ("Section 1225(b)(1) mandates detention 'for further consideration of the application for asylum,' §1225(b)(1)(B)(ii), and §1225(b)(2) requires detention 'for a [removal] proceeding,' §1225(b)(2)(A). The plain meaning of those phrases is that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum, §1225(b)(1)(B)(ii), or until removal proceedings have concluded, §1225(b)(2)(A)."). Thus, based upon the Supreme Court's holding in Jennings, we are compelled to conclude that Petitioner's detention under 8 U.S.C. §1225(b) does not statutorily entitle him to a bond hearing pending his asylum proceedings. Id. at 842.

However, post <u>Jennings</u>, several district courts have considered the issue of arriving aliens detained for unreasonably prolonged periods of time under Section 1225(b) in the due process context. <u>See</u>, *e.g.* Pulatov v. Lowe, No. 1:18-cv-0934, 2019 WL 2643076 (M.D. Pa. June 27, 2019); Destine v. Doll, No. 3:17-cv-1340, 2018 WL 3584695 (M.D. Pa. July 26, 2018) (finding that arriving aliens have Due Process rights and that a twenty-one month period of detention pursuant to §1225(b) was unreasonable, and ordering an individualized bond hearing); Fatule-Roque v. Lowe, No. 3:17-cv-1981, 2018 WL 3584696, at *6 (M.D. Pa. July 26, 2018) (determining that §1225(b) detainees enjoy basic due process rights, but concluding that petitioner's detention was not so unduly prolonged that it rendered §1225(b) unconstitutional as applied to him); Lett v. Decker, 346 F.Supp.3d 379 (S.D.N.Y. Oct. 10, 2018) (concluding that arriving aliens have Due Process rights and that a nearly ten month period of detention pursuant to §1225(b) was unreasonable, and ordering an individualized bond hearing). The Court agrees with the weight of authority finding that arriving aliens, detained pre-removal pursuant to §1225(b) have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable. Singh v. Sabol, No. 1:16-cv-2246, 2017 WL

1541847 (M.D. Pa. Apr. 28, 2017); <u>see</u> <u>also</u> Otis V. v. Green, No. 18-742 (JLL), 2018 WL 3302997 at *6-8 (D.N.J. July 5, 2018).

In the matter *sub judice*, Petitioner has been detained since May 16, 2019, a period just shy of ten months. This Court and others have previously determined that arriving aliens who have been subject to detention under §1225(b) for longer periods of time were not entitled to bond hearings because their detention had not yet reached the point of being arbitrary or unreasonable. <u>See</u> <u>Fatule-Roque</u>, 2018 WL 3584696, at *6 (concerning a fifteen-month period of detention); <u>Otis V.</u>, 2018 WL 3302997, at *8 (addressing detention for a period of just over a year). These cases compel the Court to conclude that Petitioner's detention of slightly less than ten months under § 1225(b) "is not an unconstitutional application of the statute" at present. <u>See Otis V</u>., 2018 WL 3302997, at *8. As such, he remains subject to mandatory detention and is not entitled to a bond hearing at this time.

## III.   <u>Conclusion</u>

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 will be denied without prejudice to his

right to file another petition should his detention under §1225(b) become arbitrary or unreasonable.


*s/ Malachy E. Mannion*
MALACHY E. MANNION
United States District Judge

**DATED:**     **April 20, 2020**